UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN DARLENE WATSON,<br><br>                Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security[1],<br><br>                Defendant. | Case No. C12-1295-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Susan Darlene Watson seeks review of the denial of her Disability Insurance Benefits application. She contends that the administrative law judge ("ALJ") erred by (1) failing to consider the issue of medical equivalency and failure to consider her severe impairments in combination at step three, and (2) failing to account for all credited limitations and symptoms in the residual functional capacity ("RFC") assessment. As discussed below, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

///

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

Ms. Watson is currently 56 years old, has a high school diploma, and has worked as a cook and waiter/server.[2] On August 9, 2005, she filed an application for Disability Insurance Benefits. Tr. 449. In light of an April 28, 1999 decision denying a prior application, the relevant period for her current application starts on April 29, 1999, and ends on March 31, 2002, her date last insured. Tr. 955. Her application was denied initially and on reconsideration. Tr. 361, 366. The ALJ conducted a hearing on March 18, 2008, finding Ms. Watson not disabled. Tr. 119-32.

Ms. Watson requested review of the ALJ's decision from this Court, and the Honorable John Coughenour adopted Magistrate Judge Mary Alice Theiler's Report and Recommendation, reversing the ALJ's decision and remanding the matter for additional administrative proceedings. Tr. 969-70. The ALJ conducted a second hearing, and wrote a second decision again denying Ms. Watson benefits. Tr. 952-68, 1150-73. The Appeals Counsel denied Ms. Watson's request for review (Tr. 943-46), and Ms. Watson now seeks this Court's review of the ALJ's second decision.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Watson had not engaged in substantial gainful activity during the relevant period from April 29, 1999, through March 31, 2002.

**Step two:** Ms. Watson's history of seizure disorder and obesity were severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a Listed impairment.[4]

**RFC:** Ms. Watson can perform sedentary work except she should avoid working around

---

[2] Tr. 923-24, 1169.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

dangerous machinery, heights, or operating motor vehicles, due to the seizure precautions. She can walk/stand 2 hours in an 8-hour workday because of obesity.

**Step four:** Through the date last insured, Ms. Watson could not perform her past work.

**Step five:** Through the date last insured, Ms. Watson was capable of performing other jobs existing in significant numbers in the national economy and, therefore, is not disabled.

Tr. 952-68.

## DISCUSSION

**A.    The ALJ Did Not Err at Step Two.**

In the previous remand order, the ALJ was instructed to reevaluate at step two whether Ms. Watson had a severe impairment or combination of impairments through her date last insured, or in the alternative, whether her impairments were severe between April 1999 and August 2001. Tr. 979. Ms. Watson suggests that the ALJ erred by failing to consider the alternative that she had severe impairments between April 1999 and August 2001. Dkt. 22 at 6-7 n.2. This argument is rejected because the ALJ found that Ms. Watson had two severe impairments through her date last insured, so it was unnecessary for the ALJ to consider whether she had severe impairments during a subset of that period. *See* Tr. 958-961.

**B.    The ALJ Did Not Err at Step Three.**

Ms. Watson concedes that she has not submitted evidence showing that she meets the Listing requirements for epilepsy, but argues that the ALJ erred in failing to consider whether her seizure-like episodes, which occurred 1-2 times per month between April 1999 and August 2001, medically equaled Listing 11.02. Dkt. 22 at 1-2.

Listing 11.02 defines the requirements for convulsive epilepsy, which must be "documented by detailed description of a typical seizure pattern, including all associated phenomena," with seizures occurring more than once per month despite at least three months' of

REPORT AND RECOMMENDATION - 3

treatment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(a)-(b) (defining daytime and nighttime seizures). The ALJ explicitly explained why Ms. Watson does not meet either Listing 11.02(a) or (b). Tr. 962. Ms. Watson contends that the ALJ should have considered whether her seizure-like episodes were nonetheless equivalent to Listing 11.02(a)'s "daytime episodes" because, as the ALJ himself found, they occurred at least once or twice per month between early 1996 and August 2001. *See* Tr. 963. Thus, because the episodes occurred at the frequency required by Listing 11.02, and were severe enough to cause her to lose her balance and fall, Ms. Watson argues that her episodes "could be found" medically equivalent to Listing 11.02. Dkt. 20 at 6.

Ms. Watson's argument regarding medical equivalence is simply that, however: an argument.[5] It is not evidence of "symptoms, signs and laboratory findings" equal in severity to the Listing 11.02 criteria. *See* 20 C.F.R. §§ 404.1526, 404.1529(d)(3). Ms. Watson testified that she typically did not lose consciousness when she had a seizure-like episode (Tr. 1164-65) and there is no evidence in the record indicating her episodes of losing balance and falling were equivalent in severity to the grand mal or psychomotor convulsive epilepsy defined in Listing 11.02.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. In the absence of such evidence presented

---

[5] The Court also notes that Ms. Watson did not present or discuss evidence of Listing 11.02 equivalency to the ALJ during either of the administrative hearings regarding this period of disability, or in the memorandum filed in support of her request for Appeals Council review. *See* Tr. 922 (counsel's 2008 argument that Ms. Watson does not meet a Listing, but the limitations caused by her Crohn's disease, arthritis, and obesity nonetheless rendered her unable to work); Tr. 1154-55 (counsel's 2011 argument that the limitations caused by Ms. Watson's Crohn's disease, obesity, arthritis, and seizure disorder rendered her unable to work); Tr. 950 (Appeals Council memorandum, lacking any explanation of why Ms. Watson's seizure disorder was equivalent to a Listed impairment).

[6] Though Ms. Watson also contends that the combination of her seizure-like episodes and her obesity together equaled Listing 11.02(b), this argument fails because Ms. Watson still has not presented evidence showing that her episodes were equivalent in severity to the type of seizures described in Listing 11.02, nor has she presented evidence that her obesity exacerbated

REPORT AND RECOMMENDATION - 4

in an effort to establish equivalence, an ALJ is not required to extensively discuss equivalence. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, *unless the claimant presents evidence in an effort to establish equivalence*.") (emphasis added). The ALJ's statement that Ms. Watson "did not have an impairment or combination of impairments that med or medically equaled" a Listed impairment, through the date last insured, sufficiently addresses equivalence. Tr. 962.

**C.  The ALJ's RFC Assessment and Hypothetical Properly Accounts for Credited Evidence.**

Barbara Qualls, a State agency single decision-maker, noted that an ALJ had previously found Ms. Watson capable of light work with seizure precautions. Tr. 483. She indicated that for purposes of the current application, the State agency was "adopting previous light RFC as of [date last insured]." *Id.* This opinion was affirmed by Robert Bernardez-Fu, M.D. Tr. 647. Though the ALJ mistakenly referred to Ms. Qualls as a medical doctor (Tr. 963), this clerical error is inconsequential because Ms. Qualls's findings were affirmed by Dr. Bernardez-Fu and therefore properly considered by the ALJ. *See* 20 C.F.R. § 1527(e).

Dr. Bernardez-Fu's opinion incorporates the seizure precautions included by the ALJ in the previous decision, specifically the prohibition on exposure to "hazards (machinery, heights, etc.)". Tr. 480. The ALJ included that limitation in his RFC assessment: ". . . [Ms. Watson] should avoid working around dangerous machinery, heights, or operating motor vehicles due to the seizure precautions." Tr. 962. Ms. Watson argues that the ALJ erred in restricting Ms. Watson from exposure to "dangerous machinery," when Dr. Bernardez-Fu did not include the "dangerous" qualifier. Dkt. 22 at 6-7. According to Ms. Watson, the ALJ's reference to

---

her episodes. Dkt. 22 at 5 n.1.

REPORT AND RECOMMENDATION - 5

1  "dangerous machinery" is ambiguous and therefore invites speculation.  Dkt. 22 at 7.

2  Ms. Watson's contentions are not persuasive.  Dr. Bernardez-Fu's opinion affirmed a
3  finding that Ms. Watson should avoid hazards in the form of "machinery, heights, etc."  Tr. 480.
4  The ALJ reasonably construed the meaning of that phrase to refer to "dangerous machinery" —
5  not all machinery is hazardous or dangerous, and the ALJ's choice of words is consistent with
6  Dr. Bernardez-Fu's opinion.  Accordingly, because the ALJ's RFC assessment is consistent with
7  Dr. Bernardez-Fu's opinion, Ms. Watson has failed to identify an error in the RFC assessment.
8  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010).

9  Ms. Watson presents an additional argument regarding the machinery limitation, as well.
10  When the ALJ posed a hypothetical to the vocational expert ("VE") at the administrative
11  hearing, he specified that Ms. Watson should avoid "operation of hazardous machinery or
12  working at heights and around any other, you know, moving machinery."  Tr. 1170.  Ms. Watson
13  argues that that this restriction was inconsistent with the VE's testimony that Ms. Watson could
14  work as a semi-conductor bonder, because that job requires operation of a bonding machine.
15  Dkt. 20 at 14 (citing Dictionary of Occupational Titles ("DOT") 726.685-066, 1991 WL 679631
16  (Jan. 1, 2008)).  The Court rejects Ms. Watson's attempt to categorize a bonding machine as a
17  machine with moving parts, in contravention of the ALJ's hypothetical, because the DOT
18  specifically indicates that the semi-conductor bonder job does not require any exposure to
19  moving mechanical parts.  DOT 726.685-066.

20  Lastly, Ms. Watson argues that the ALJ's RFC assessment and VE hypothetical are
21  deficient because they fail to account for the seizure-like episodes that the ALJ himself found
22  had occurred on a monthly basis before August 2001.  Dkt. 20 at 14.  While the ALJ did indicate
23  that Ms. Watson experienced those episodes on a monthly basis before August 2001, and

REPORT AND RECOMMENDATION - 6

included seizure precautions in his RFC assessment, he also explained why he found that not all of Ms. Watson's alleged limitations from the seizure disorder were credible. Tr. 965. The ALJ specifically discussed Ms. Watson's testimony exaggerating with which frequency she experienced the episodes, and inferred from Ms. Watson's lack of desire for medication that her seizure-like symptoms were not as disabling as alleged. *Id.* An ALJ's RFC assessment need not account for limitations that have been properly rejected. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of [claimant's] treating physicians, which were permissibly discounted."). Because Ms. Watson does not challenge the ALJ's adverse credibility determination, she has not established that the ALJ erred in failing to account for limitations that he indicated he found to lack credibility.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **June 6, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **June 7, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The

///

///

///

REPORT AND RECOMMENDATION - 7

1 failure to timely object may affect the right to appeal.

2     DATED this 23rd day of May, 2013.

3

4                                         BRIAN A. TSUCHIDA
                                        United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 8